UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

DIALIGHT CORPORATION, a New
Jersey corporation,

                   Plaintiff,

   v.

SCOTT CASEY ALLEN, an individual,

                   Defendant.

Civil Action No. 15-1090 (FLW)(LHG)

**OPINION**

**WOLFSON, United States District Judge**:

This matter comes before the Court on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2) filed by Defendant Scott Casey Allen ("Allen" or "Defendant"), seeking dismissal of the Complaint filed by Plaintiff Dialight Corporation ("Dialight" or "Plaintiff"), for want of personal jurisdiction. In the alternative, Allen requests transfer of this matter to the United States District Court for the Southern District of Texas under 28 U.S.C. § 1404(a).

For the following reasons, Defendant's motion to transfer venue to the United States District Court for the Southern District of Texas is granted, and his motion to dismiss for want of personal jurisdiction is dismissed as moot.

**I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

The following facts are taken from the Complaint, except where noted.[1] Allen is a citizen and resident of Texas. Compl. ¶ 3; Affidavit of Scott Casey Allen, dated March 6, 2015 ("Allen Aff.") ¶¶ 4, 30. Dialight is a Delaware corporation with its principal place of business in

---

[1] In considering a motion to transfer, the Court may consider "affidavits, depositions, stipulations, or other documents containing facts that would tend to establish the necessary elements for a transfer." *Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 756-57 (3d Cir. 1973).

1

Farmingdale, New Jersey. Dialight sells light-emitting diode ("LED") products for offshore oil rigs. Compl. ¶¶ 2, 25-33.

Allen was hired by Dialight in 2006 or early 2007.[2] Compl. ¶ 9; Allen Aff. ¶ 9. On January 2, 2007, Allen signed an Agreement Covering Confidentiality, Intellectual Property and Restrictions on Competition (the "2007 Agreement"). Compl. ¶ 12, Ex. 1; Allen Aff. ¶ 10. The 2007 Agreement contained a non-compete provision for a 12-month period after Allen's employment ended, and a broad confidentiality provision. Compl. Ex. 1. The 2007 Agreement also contained a choice of law and forum selection clause, which provided:

> This Agreement shall be governed by, and construed in accordance with, the laws of the state of New Jersey without regard to principles of conflicts of law. The parties hereby irrevocably consent to the venue and exclusive personal jurisdiction of the U.S. District Court for the District of New Jersey sitting in Newark, or if such court lacks subject matter jurisdiction, to the jurisdiction of the Superior Court -- Law Division, located in the county of Monmouth, for all purposes in connection with this agreement. The parties hereby expressly waive any and all claims and defenses either may have in respect to any proceeding in such court based on alleged lack of personal jurisdiction, improper venue or inconvenient forum, or any similar defense, to the maximum extent permitted by law.

*Id.*

In 2008, Allen resigned from Dialight and began to work for Safecon, Inc. ("Safecon"), a company in the offshore LED market, as an industrial sales manager for the Texas market. Allen Aff. ¶¶ 9, 17. Two months later, Dialight enticed Allen to leave Safecon and return to Dialight as its regional sales manager for the gulf coast region. *Id.* at ¶¶ 18, 20, 22. When Allen returned to

---

[2] Allen avers he was hired in 2006 as Dialight's "Regional Manager, Sales, for the Eastern United States." Allen Aff. ¶ 9. Dialight alleges that Allen applied to Dialight in 2006 and began working in 2007, Compl. ¶ 9, and "was the Gulf Coast Regional Sales Manager," Compl. ¶ 10.

Dialight, he did not sign a new agreement similar to the 2007 Agreement. *Id.* at ¶¶ 20-21. In April 2013, Allen again resigned from Dialight.[3]  Compl. ¶ 21; Allen Aff. ¶ 23.

During his employment at Dialight, Allen worked from his home office in Texas. Allen Aff. ¶ 40. Allen owns no property in New Jersey, has never resided in New Jersey, and has no family in New Jersey. *Id.* at ¶¶ 33-36. Allen's only contacts with New Jersey during his employment were occasioned by Dialight's location in New Jersey. *Id.* at ¶ 41. In that regard, Allen would visit Dialight's offices in New Jersey, at Dialight's direction, approximately two times a year. *Id.* at ¶ 42. Those visits could last for "a couple of days." *Id.* Allen also routinely accessed Dialight's computer servers, located in New Jersey, from his Texas home during his employment. Affidavit of David Myler, dated April 6, 2015 ("Myler Aff.") ¶ 2.

After leaving Dialight, from April 2013 to August 2014, Allen operated a motorcycle business from his Texas home, and, in August 2014, he worked briefly for a wire and cable company in Texas. Allen Aff. ¶¶ 27-28. In September 2014, Allen accepted a job as the Central/Gulf Coast Regional Sales Manager for AZZ Lighting Systems (Rig-A-Lite) ("AZZ"), a Texas company specializing in LED lighting products. Compl. ¶¶ 22-24, 47; Allen Aff. ¶ 29.

Dialight alleges that, at AZZ, Allen "has begun using his knowledge of Dialight's trade secrets to directly compete against Dialight," Compl. ¶ 67, and that he tortiously interfered with Dialight's confidentiality agreement with Joel Potyk, another former employee of Dialight who now also works for AZZ, *id.* at ¶¶ 129-32, by conspiring with Potyk to engage in unfair competition with Dialight, *id.* at ¶¶ 61-66, 74-79. Specifically, Dialight alleges that in November 2014, Allen

---

[3] Dialight's allegations with respect to Allen's break in employment conflict; Dialight simultaneously asserts that Allen "began working for Dialight in early 2007, and worked for Dialight through 2013," Compl. ¶ 9, and that "Allen worked for Dialight for all or parts of at least seven (7) years," Compl. ¶ 20.

made a sales-pitch to potential customers at Texas Generator which utilized confidential information belonging to Dialight. *Id.* at ¶¶ 68-73; Ex. 6. Dialight also alleges that Allen is using his knowledge of Dialight's trade secrets to benefit AZZ in general. *See id.* at ¶¶ 74-97.

Sometime after Allen began working at AZZ, Dialight filed suit against Allen and Potyk in Michigan state court, under docket no. 2014-144131-CK ("Michigan Action"), asserting claims for, *inter alia*, misappropriation of trade secrets and confidential information. *Id.* at ¶ 5. The Michigan Action was dismissed as to Allen for lack of personal jurisdiction. *Id.* at ¶ 6.

On February 10, 2015, Plaintiff filed this suit in the District of New Jersey, asserting that Defendant violated the New Jersey Trade Secrets Act ("NJTSA"), N.J.S.A. 56:15-1 to -9 (Count I), civil conspiracy (Count II), breach of the duty of confidentiality/fiduciary duty (Count III), unfair competition (Count IV), tortious interference (Count V), and sought attorneys' fees under the NJTSA (Count VI). On March 13, 2015, Defendant filed the instant motion to dismiss the Complaint under Rule 12(b)(2) for want of personal jurisdiction, in lieu of answer, or, in the alternative, transfer to the United States District Court for the Southern District of Texas.

## II.  STANDARD OF REVIEW

"A federal court sitting in New Jersey has jurisdiction over parties to the extent provided under New Jersey state law." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004). "New Jersey's long-arm statute provides for jurisdiction coextensive with the due process requirements of the United States Constitution." *Id.* (citing N.J. Ct. R. 4:4-4(c)).

A motion to dismiss for lack of personal jurisdiction is governed by Federal Rule of Civil Procedure 12(b)(2). The plaintiff has the burden to prove facts sufficient to establish personal jurisdiction by a preponderance of the evidence. *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 146 (3d Cir. 1992); *Pro Sports Inc. v. West*, 639 F. Supp. 2d 475, 478 (D.N.J. 2009); *Ameripay, LLC v. Ameripay Payroll, Ltd.*, 334 F. Supp. 2d 629, 632 (D.N.J. 2004). "[W]hen the

4

court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales*, 384 F.3d at 97; *see also Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 457 (3d Cir. 2003). However, although a plaintiff is entitled to have its allegations treated as true and disputed facts construed in its favor, it still "'bears the burden to prove, by a preponderance of the evidence,' that personal jurisdiction is proper." *Cerciello v. Canale*, 563 F. Appx. 924, 925 n.1 (3d Cir. 2014) (quoting *Carteret Sav. Bank*, 954 F.2d at 146). "To meet that burden, [the plaintiff] must 'establish[] jurisdictional facts through sworn affidavits or other competent evidence.'" *Id.* (citation omitted). "In other words, 'bare pleadings alone' are insufficient to withstand a motion to dismiss for lack of personal jurisdiction." *Id.* (citation omitted); *see also Patterson by Patterson v. F.B.I.*, 893 F.2d 595, 604 (3d Cir.) (holding that a plaintiff "must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence; reliance on the bare pleadings is not enough."), *cert. denied*, 498 U.S. 812 (1990). "Once the plaintiff has shown minimum contacts, the burden shifts to the defendant, who must show that the assertion of jurisdiction would be unreasonable." *Ameripay*, 334 F. Supp. 2d at 633 (citing *Mellon Bank (East) PFSF, Nat'l Assoc. v. Farino*, 960 F.2d 1217, 1221 (3d Cir. 1992)).

**III.   DISCUSSION**

    **A.   The Court is Unable to Determine whether Defendant Consented to Jurisdiction in New Jersey for All the Claims Asserted in the Complaint.**

The parties dispute whether the forum selection provision in the 2007 Agreement is valid and enforceable and, thus, whether the Court has personal jurisdiction over Defendant.[4] However,

---

[4] In the absence of a valid and enforceable forum selection provision, this Court would not have personal jurisdiction over Defendant for Plaintiff's claims because he lacks sufficient minimum contacts with New Jersey. This Court cannot exercise general jurisdiction over

even assuming that the forum selection clause in the 2007 Agreement is valid and enforceable, and that it is sufficiently broad so as to encompass Plaintiff's tort and statutory violation claims,[5] the Court in unable to determine whether the forum selection provision in the 2007 Agreement was in force during Defendant's second period of employment.

Defendant terminated the 2007 Agreement when he left Dialight to work for Safecon in 2008. The parties dispute, however, whether the 2007 Agreement was revived when Defendant returned to Dialight two months later. If the 2007 Agreement was not revived when Defendant returned, the 2007 Agreement's forum selection provision would not be applicable to Plaintiff's claims that are based on facts arising after the 2007 Agreement's termination in 2008. *See*

---

Defendant because he does not have "continuous and systematic" contacts with New Jersey; Plaintiff has provided no evidence, nor even alleges, that Defendant owns any real property, maintains a bank account, or conducts a significant portion of his business in New Jersey. *Cf.* Allen Aff. ¶¶ 33-36. Nor can this Court exercise specific jurisdiction, as all of Defendant's contacts with New Jersey -- such as visiting Dialight offices in New Jersey and accessing its computer servers in New Jersey remotely from Texas -- were performed in furtherance of his employment and "occasioned by Dialight's offices being located in New Jersey." Allen Aff. ¶ 41. *See Walden v. Fiore*, __ U.S. __, 134 S. Ct. 1115, 1122 (2014) ("The relationship [between Defendant and forum state] must arise out of contacts that the 'Defendant *himself*' creates with the forum state.") (quoting *Burger King*, 471 U.S. at 475); *Epsilon Plastics, Inc. v. Goscin*, No. 05-4935, 2006 U.S. Dist. LEXIS 17596, at *11-14 (D.N.J. Mar. 24, 2006); *see also 360 Mortgage Grp., LLC v. Stonegate Mortgage Corp.*, No. A-13-CA-942-SS, 2014 U.S. Dist. LEXIS 68567, at *10-13 (W.D. Tex. May 19, 2014). Finally, this Court cannot exercise *Calder* jurisdiction over Defendant because all of his alleged tortious activities, such as interfering with Potyk's confidentiality agreement and using confidential information to engage in unfair competition with Plaintiff in Texas, were not "targeted" at New Jersey and will only be indirectly felt by Plaintiff in New Jersey by virtue of it principal place of business being located in this state. *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 262-65 (3d Cir. 1998).

[5] The Third Circuit has held that forum selection provisions may control venue for tort claims that "arise out of the contractual relation" or "implicate the contract's terms." *Crescent Int'l, Inc. v. Avatar Communities, Inc.,* 857 F.2d 943, 944 (3d Cir. 1988); *TriState HVAC Equip., LLP v. Big Belly Solar, Inc.,* 752 F. Supp. 2d 517, 536 (E.D. Pa. 2010). While Plaintiff's unfair competition and conspiracy claims may "arise out of the contractual relation," given that they are predicated on the misuse of confidential information, it is less clear that Plaintiff's claim that Defendant tortiously interfered with Potyk's confidentiality agreement is similarly connected to the 2007 Agreement to justify holding that Defendant consented to jurisdiction in New Jersey for that claim.

6

*Mobilificio San Giacomo S.P.A. v. Stoffi*, No. 96-415, 1998 U.S. Dist. LEXIS 3288, at *30-31 (D. Del. Jan. 29, 1998); *Lockwood Corp. v. Black*, 501 F. Supp. 261 (N.D. Tex. 1980) (holding forum-selection clause inapplicable where claim was based on transactions that occurred after contract was terminated), *aff'd*, 669 F.2d 324 (5th Cir. 1982). *Cf. Advent Electronics, Inc. v. Samsung Semiconductor, Inc.*, 709 F. Supp. 843, 846 n.4 (N.D. Ill. 1989) (distinguishing *Lockwood* where party sought to enforce duties that arose "from and during the existence" of the terminated contract which contained the forum selection provision).

To exercise personal jurisdiction over those aspects of Plaintiff's claims that are predicated on confidential information Defendant acquired after returning to Dialight in 2008, the Court would have to determine whether the 2007 Agreement was revived. This question, however, is not only dispositive of the issue of personal jurisdiction over this aspect of Plaintiff's claims, but it also goes to the merits: if the Court finds that the 2007 Agreement was revived, then it must also find that there is a confidentiality provision, enforceable for the 2008 to 2013 time period, as well. In other words, this Court cannot determine whether it has personal jurisdiction over Defendant without also simultaneously haling him into court to defend the substantive merits of the claim.[6] Because the two issues are inextricably intertwined, they should be resolved by a court that clearly has personal jurisdiction over Defendant independent of the forum selection provision in question. Accordingly, based on a review of the pertinent private and public interests under 28 U.S.C. § 1404(a), discussed in more detail below, the Court will transfer this matter to the United States District Court for the Southern District of Texas.

---

[6] Moreover, without deciding the issue, the Court notes that the only "evidence" Plaintiff provides that the 2007 Agreement bound Defendant during his second tour of duty is its argument that it "would have been unheard of for it to not expect one of its employees to be bound by" a confidentiality agreement, and that Defendant "always believed" the 2007 Agreement was binding because he complied with the one-year non-compete provision after leaving Dialight in 2013.

7

### B. Motion to Transfer pursuant to 28 U.S.C. § 1404(a)

28 U.S.C. § 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." A court may transfer an action under Section 1404(a) "even in the absence of personal jurisdiction." *Sidari v. Caesar's Pocono Resorts*, 29 F. Appx. 845, 847 (3d Cir. 2002) (citing *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 467 (1962)).

The burden of establishing the need for transfer rests with the movant, and, "in ruling on defendants' motion the plaintiff's choice of venue should not be lightly disturbed." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995) (citations omitted). "The burden is not on the plaintiff to show the proposed alternative forum is inadequate. Rather, the burden is on the moving party to show the proposed alternative forum is not only adequate, but also more appropriate than the present forum." *Liggett Grp. Inc. v. R.J. Reynolds Tobacco Co.*, 102 F. Supp. 2d 518, 528-29 (D.N.J. 2000) (citations omitted). "The inquiry into the interests of the parties may be resolved by an examination of the affidavits submitted by the parties." *Id.* at 529 (citations omitted).

Plaintiff opposes Defendant's transfer request, arguing that Defendant waived any objection to New Jersey as the proper forum when he signed the 2007 Agreement. However, "a waiver of an objection to improper venue does not preclude a Section 1404(a) motion to transfer for the convenience of the parties and witnesses." *Siemens Fin. Servs. v. Patel*, No. 09-5079, 2010 U.S. Dist. LEXIS 59089, at *11 (D.N.J. June 15, 2010); 17-111 *Moore's Federal Practice - Civil* § 111.18. And, although the presence of the forum selection clause for the earlier claims in this matter is a "significant factor that figures centrally in the district court's calculus," *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988), it is not dispositive of a motion to transfer. "[T]he

8

existence of a forum selection clause whose enforcement is not unreasonable does not necessarily prevent the selected forum from ordering a transfer of the case pursuant to Section 1404(a)." *Plum Tree*, 488 F.2d at 758. Instead, the Court must balance all of the relevant factors to determine whether transfer is appropriate.

Three factors must be considered when determining whether to grant a transfer under Section 1404(a): (1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice. *Liggett*, 102 F. Supp. 2d at 526 (citing 28 U.S.C. § 1404(a); *Jumara*, 55 F.3d at 879). These factors are not exclusive, and must be applied in an "individualized analysis . . . made on the unique facts presented in each case." *Id.* at 526-27 (citations omitted). The first two factors have been refined into a non-exhaustive list of private and public interests that courts should consider. *See Jumara*, 55 F.3d at 879-80. As set forth below, a balance of the pertinent private and public interests, and consideration of the interests of justice, indicates that transfer of this matter to the United States District Court for the Southern District of Texas is appropriate.

      **i.**      **Private Interests**

Under Section 1404(a), the private interests a court should consider include:

> (1) plaintiff's forum preference as manifested in the original choice; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses - but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

*Danka Funding*, 21 F. Supp. 2d at 474 (citing *Jumara*, 55 F.3d at 879) (internal quotations omitted). The Court finds all of these factors are all either neutral or favor transfer.

While a plaintiff's choice of forum is a "paramount concern" that is considered "presumptively correct," *Lawrence v. Xerox Corp.*, 56 F. Supp. 2d 442, 452 (D.N.J. 1999), "[t]he

choice of forum by a plaintiff is simply a preference; it is not a right." *Liggett*, 102 F. Supp. 2d at 530. Where, as here, "the operative facts of a lawsuit occurred outside the forum selected by plaintiff," the plaintiff's choice of forum is entitled to "less deference." *Danka Funding*, 21 F. Supp. 2d at 475; *U.S. Mineral Prods. Co. v. T-Mar Constr., Inc.*, No. 09-5895, 2010 U.S. Dist. LEXIS 16188, at *10 (D.N.J. Feb. 23, 2010) ("The 'locus of the alleged culpable conduct' determines the place where the claim arose.") (quoting *Van Cauwenberghe v. Biard*, 486 U.S. 517, 529 (1988)). In this case, all of the operative facts occurred outside New Jersey. During his employment at Dialight, Defendant worked from his home office in Texas, and now works for AZZ in Texas as its gulf coast regional sales manager. Allen Aff. ¶¶ 6, 40, 45. Plaintiff fails to identify any operative facts that occurred in New Jersey other than Defendant accessing Dialight's computer servers, located in New Jersey, during the course of his employment. *Id.* at ¶ 41; Myler Aff. ¶ 2. Defendant is allegedly conspiring against, and unfairly competing with, Plaintiff in Texas (and the gulf coast region), not New Jersey. *See, e.g.* Compl. ¶¶ 68-73; Ex. 6. And, tellingly, New Jersey was not Plaintiff's "first choice" of forum for this matter – Plaintiff previously filed suit against Defendant in Michigan before agreeing to a dismissal. *Id.* at ¶¶ 5-6. Defendant, however, has been steadfast in maintaining that his preference – Texas – is the appropriate forum. Thus, these two interests weigh in favor of transfer.

"In considering the 'convenience of the parties,' [d]istrict [c]ourts focus on the relative physical and financial condition of the parties." *Liggett*, 102 F. Supp. 2d at 533 (citing *Jumara*, 55 F.3d at 879). Defendant is a Texas citizen residing in Houston. Compl. ¶ 3; Allen Aff. ¶¶ 4, 30. Defendant asserts that forcing him to repeatedly travel to New Jersey to defend this action would result in personal and professional hardship on him, Allen Aff. at ¶¶ 51-52, and would impact his ability to meet with legal counsel and assist in his defense, *id.* at ¶ 53. In contrast,

Plaintiff is a Delaware corporation with its principal place of business in New Jersey. Compl. ¶ 2. Plaintiff has a national and international sales presence, *id.* at ¶ 25; Allen Aff. 46-47, and maintains an office in Houston, Texas, Allen Aff. ¶ 48, Ex. A. Plaintiff alleges that in 2013, it sold "approximately" $85,000,000 worth of products, "making Dialight, to its knowledge, the largest LED company selling in its market spaces." Compl. ¶ 26; *see also id.* at ¶ 29. Although Defendant has not provided this Court with specific information relating to his financial condition, presumably, his resources are less than those of his former employer. Therefore, the convenience of the parties weighs in favor of transfer.

The convenience of the witnesses must also be considered, but "only to the extent that the witnesses may actually be unavailable for trial in one of the fora." *Jumara*, 55 F.3d at 879. The only potential non-party fact witness discernable from the parties' filings appears to be Jason Gillis, an electrical technician for the West Texas Oilfield, who is located in Ector County, Texas.[7] However, Gillis is Plaintiff's witness. *See Koken v. Lexington Ins. Co.*, No. 04-2539, 2004 U.S. Dist. LEXIS 22192, at *11 (E.D. Pa. Nov. 2, 2004) ("[W]hether the plaintiff's witnesses may experience inconvenience is a matter of consideration for the plaintiff, rather than for the defendant."). Nor has the Court been presented with any evidence that would indicate Mr. Gillis would find it difficult to travel to New Jersey. This factor is, therefore, neutral.[8]

---

[7] The record also contains the affidavit of David Myler, Dialight's Vice President of Human Resources, who is located in Monmouth, New Jersey. However, "the convenience of witnesses [who] are employees of a party carries no weight because the parties are obligated to procure their attendance at trial." *Mentor Graphics Corp. v. Quickturn Design Sys.*, 77 F. Supp. 2d 505, 510 (D. Del. 1999).

[8] To the extent the parties may seek third-party discovery from AZZ (and its employees), the Court notes that that company is located in Texas, not New Jersey.

11

Finally, the Court must also consider "the location of books and records (only to the extent that the files could not be produced in the alternative forum)." *Jumara*, 55 F.3d at 879. "The technological advances of recent years have significantly reduced the weight of [this factor] in the balance of convenience analysis." *Lomanno v. Black*, 285 F. Supp. 2d 637, 647 (E.D. Pa. 2003). Where, as here, there is no evidence to suggest that either parties' evidence would be unavailable in either forum, this factor carries "no weight." *Copley v. Wyeth, Inc.*, No. 09-722, 2009 U.S. Dist. LEXIS 62440, at *18 (E.D. Pa. July 16, 2009); *Coppola v. Ferrellgas*, 250 F.R.D. 195, 200 (E.D. Pa. 2008). Accordingly, the Court finds the private interests weigh in favor of transfer.

### ii. Public Interests

Under Section 1404, the public interests a court should consider include:

> (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases.

*Danka Funding*, 21 F. Supp. 2d at 474 (citing *Jumara*, 55 F.3d at 879-80) (internal quotations omitted). The Court finds these interests are also all either neutral or favor transfer.

The parties have not argued, and the Court cannot discern, why a judgment rendered in this case in one forum would not be enforceable in the other and, accordingly, this factor does not weigh in favor of either forum. *See Metro. Life Ins. Co. v. Bank One, N.A.*, No.'s 03-1882, 03-2784, 2012 U.S. Dist. LEXIS 137119, at *23-24 (D.N.J. Sept. 25, 2012). Similarly, the public

12

policies of the fora,[9] the familiarity of the trial judge with the applicable state law,[10] and the relatively similar levels of congestion of the two forums,[11] are neutral factors.

"[P]ractical considerations are relevant and warrant transfer if they could make the trial easy, expeditious, or inexpensive." *Metro. Life Ins. Co. v. Bank One, N.A.*, 2012 U.S. Dist. LEXIS 137119, at *21. "One practical consideration that supports transfer is efficiency. 'To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent.'" *Id.* (quoting *Continental Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26

---

[9] Both states enforce confidentiality provisions in employment contracts provided that they protect a legitimate interest, impose no undue hardship on the employee, and are not injurious to the public. *Compare Ameriprise Fin. Servs. v. Koenig*, No. 11-6140, 2012 U.S. Dist. LEXIS 13864, at *17 n.8 (D.N.J. Feb. 6, 2012) (citing *Solari Industries, Inc. v. Malady*, 55 N.J. 571, 576-78 (1970)), *with Gallagher Healthcare Ins. Servs. v. Vogelsang*, 312 S.W.3d 640, 656 (Tex. App. 2009) (citing *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 681-82 (Tex. 1990)).

[10] Without performing the choice of law analyses for Plaintiff's claims, which will be governed by New Jersey choice of law rules, *Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964); *Amica Mut. Ins. Co. v. Fogel*, 656 F.3d 167, 171 (3d Cir. 2011), a federal judge sitting in either state will be capable of applying the contract and tort law that is ultimately found to be applicable to Plaintiff's claims. *See, e.g.*, *McCraw v. GlaxoSmithKline*, No. 12-2119, 2014 U.S. Dist. LEXIS 6912, at *20-21 (E.D. Pa. Jan. 17, 2014); *Snyder v. Bertucci's Rest. Corp.*, No. 12-5382, 2012 U.S. Dist. LEXIS 178533, at*13 (E.D. Pa. Dec. 18, 2012); *Sherwood Grp., Inc. v. Rittereiser*, No. 90-2414, 1990 U.S. Dist. LEXIS 13984, at *17 (D.N.J. Oct. 17, 1990); *see also Selective Way Ins. Co. v. Glasstech, Inc.*, No. 14-3457, 2014 U.S. Dist. LEXIS 163457, at *19 (D.N.J. Nov. 21, 2014) (noting that, in determining which law to apply, whether transferred or not, any court hearing that matter "will be called upon to examine the laws of both states."). Thus, to the extent that this factor is relevant, it carries little weight in this matter. *See Sherwood*, 1990 U.S. Dist. LEXIS 13984 at *17 ("The fact that the law of another jurisdiction governs the outcome of the case is a factor accorded little weight on a motion to transfer[.]") (quoting *Vassallo v. Niedermeyer*, 495 F. Supp. 757, 760 (S.D.N.Y. 1980).

[11] As of June 30, 2015, the District of New Jersey has 10,435 total filings spread over 17 judgeships, for an average of 614 filings per judge. The median time between filing and disposition for civil matters is 7.8 months. The Southern District of Texas has 14,159 total filings, spread over 19 judgeships, for an average of 745 filings per judge. The median time between filing and disposition for civil matters is 7.2 months. *See* http://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2015/06/30-3.

13

(1960)); *see also McLaughlin v. GlaxoSmithKline*, LLC, No. 12-3272, 2012 U.S. Dist. LEXIS 149057, at *16 (E.D. Pa. Oct. 17, 2012) (noting that "the location of potential witnesses . . . is also a relevant factor for an expeditious and inexpensive trial). It makes little sense to require the parties to litigate in both forums when there is no question that Texas has the ability to exercise personal jurisdiction over Defendant for all of Plaintiff's claims. Further, the "local interests" also favor transfer, as Plaintiff alleges that Defendant's tortious activity, such as his presentation at Texas Oil, took place in Texas, and resulted in unfair competition with Plaintiff in the gulf coast region. *See Czajkowski v. Peal*, No. 14-3803, 2015 U.S. Dist. LEXIS 54311, 19-20 (D.N.J. Apr. 24, 2015) ("Typically, when a substantial amount of the alleged culpable conduct occurred in one forum, that court favors retaining jurisdiction as a matter of local interest."). Therefore, the Court finds that the public interests weigh in favor of transfer.

### iii. Interests of Justice

In addition to the balance of the above private and public interests, the interests of justice would also be satisfied by a transfer to the United States District Court for the Southern District of Texas. As noted above, this Court cannot discern on the record presented by Plaintiff whether it has personal jurisdiction over Defendant for all of Plaintiff's claims. *See Amtrust at Lloyd's Ltd. v. Breslin*, No. 14-7761, 2015 U.S. Dist. LEXIS 38350, at *12 (D.N.J. Mar. 26, 2015) ("The Third Circuit has held that where there is a bona fide dispute over the existence of *in personam* jurisdiction, the interests of justice are furthered by transfer of the action to another district in which the action could have clearly been brought.") (citing *Schwilm v. Holbrook*, 661 F.2d 12, 16 (3d Cir. 1981)); *Societe Novelle Generale de Promotion v. Kool Stop Int'l, Inc.*, 633 F. Supp. 153, 155 (E.D. Pa. 1985) ("If the lack of *in personam* jurisdiction is in doubt, sound judicial administration requires transfer to a district where it clearly could have been brought."). If the

14

matter is not transferred to Texas, Plaintiff will be required to litigate in two forums to be heard on all of its claims. *See Custom Art Metals, Inc. v. Kiewit Eastern Co.*, No. 87-7215, 1988 U.S. Dist. LEXIS 2572, at *6 (E.D. Pa. Mar. 29, 1988) ("The interest of justice strongly favors the efficient disposal of all related claims in one action."). In light of the fact that the balance of private and public interests weighs in favor of transfer, the more prudent course is to transfer the matter to the United States District Court for the Southern District of Texas.

## IV.   CONCLUSION

For the foregoing reasons, Defendant's motion to transfer venue to the United States District Court for the Southern District of Texas is granted, and his motion to dismiss for want of personal jurisdiction is dismissed as moot.

Dated: October 14, 2015

/s/ The Honorable Freda L. Wolfson

United States District Judge